OPINION ON REHEARING
 

 Opinion by
 

 Justice LANG.
 

 Appellant’s motion for rehearing is GRANTED in part. The Court’s opinion and judgment of September 1, 2004 are withdrawn, and this opinion is substituted in its place to state good cause for the allocation of costs on appeal and to remand the issue of trial court costs. In all other respects, appellants’ motion for rehearing is DENIED.
 

 Beginning in 1992, Recognition Communications, Inc. (RCI) contracted with American Automobile Association, Inc. (AAA) to act as a publisher’s advertising representative soliciting and selling advertisements for
 
 AAA World,
 
 a magazine published by AAA. After AAA terminated the publisher’s advertising agreement in 1997, RCI sued AAA for breach of the agreement. RCI alleged that it had an exclusive contract for advertisements that AAA received from RCI’s territory, it was entitled to commissions on certain accounts pursuant to its agreement with AAA, and AAA faded to pay those commissions. RCI also alleged that AAA fraudulently induced it to add territory by representing those accounts were included in the new territory, but then AAA refused to pay commissions on those accounts. RCI also sued AAA Club Services, Inc., a subsidiary of an AAA member club, for tortious interference with the agreement. RCI alleged that certain agents of AAA Club Services,
 
 *868
 
 Inc. caused AAA to terminate the agreement.
 

 The trial court submitted to the jury issues on ambiguity and interpretation of the agreement, the claims described above, and RCI’s requests for attorney’s fees. The jury found against RCI on all issues. The trial court entered a judgment that RCI take nothing. In nine issues, RCI challenges (a) the submission of the question regarding the ambiguity of certain paragraphs of the agreement and the factual sufficiency of the jury’s failure to find that the accounts for which RCI sought payment were included in the agreement; (b) the trial court’s ruling that certain paragraphs were ambiguous; (c) the sufficiency of the evidence supporting the jury’s negative answer to RCI’s request for attorney’s fees incurred in obtaining a “termination fee”; and (d) the factual sufficiency of the evidence supporting the jury’s negative answers to the tort, damages, and attorney’s fees for breach of agreement questions. For the reasons that follow, we reverse the trial court’s judgment as to the award of attorney’s fees for the “termination fee” and render judgment in RCI’s favor on that claim, and we affirm the trial court’s judgment in all other respects.
 

 I. FACTUAL AND PROCEDURAL BACKGROUND
 

 a.RCI’s and AAA’s History
 

 Matt Kincaid was the president of RCI. His brothers Eric and Lance were also employed by RCI. RCI had contracts with various magazine publishers to solicit and sell advertisements. In turn, RCI had contracts with subrepresentatives to cover RCI’s territory.
 

 AAA, a not-for-profit corporation, was a federation of independent member clubs. The member clubs provided various automobile and travel-related services to dues-paying members. The member clubs included whole states, parts of states, or spanned several states. The member clubs communicated with their members, usually through a travel magazine. AAA operated some clubs as divisions. In 1996, AAA sold three divisions, AAA Hawaii, AAA Texas, and AAA New Mexico, to AAA Club Services, Inc., a wholly owned subsidiary of the Automobile Club of Southern California (ACSC), an AAA member club. AAA Club Services, Inc. was formed in 1996 to be the parent of these three new subsidiaries.
 

 AAA published
 
 AAA World
 
 to communicate with the individual members in the divisions. Among its methods of selling advertising, AAA entered into contracts with advertising representatives, like RCI, to sell advertisements in
 
 AAA World.
 

 b.RCI and AAA’s Agreement
 

 In 1990, Matt Hamill was hired as national advertising manager of
 
 AAA World.
 
 He was told to increase the amount of advertisements in the magazine. Matt Kincaid contacted AAA soliciting business, and in early 1992, Hamill contacted Kin-caid. In February 1992, Hamill and Kin-kaid signed the “Publisher’s Advertising Representative Agreement” between RCI and AAA, which is at issue here.
 

 c.RCI and AAA Revised Agreement
 

 The record reflects that possibly before, but certainly after the initial contract was signed, Kincaid requested Hamill to give RCI additional territory by making RCI the national sales representative for AAA. At a meeting in December 1993, at which Kincaid discussed adding additional territory with Hamill, AAA provided a “Prepaid Commission Report” showing what accounts were already producing income for the advertising agency that held the account in the territory. According to RCI, this report was provided by AAA so
 
 *869
 
 RCI could see the “income stream” RCI could expect to acquire if it received additional territory. The report includes several accounts labeled “In-house”: Auto Plan, Auto Insider, and two other accounts. All accounts showed a “net” amount and an advertising representative’s identifying number. The previous advertising representative had been paid commissions on the “In-house” accounts.
 

 Beginning in 1994, with AAA’s agreement, RCI added the territory shown on the “Prepaid Commission Report.” Later in 1994, AAA decided to stop paying commissions on the Auto Insider and Auto Plan accounts. AAA labeled certain accounts, including Auto Insider and Auto Plan, “house accounts.” The house accounts, which previously had been “com-missionable” were no longer “eommissiona-ble.” RCI submitted claims to AAA for Auto Insider and Auto Plan advertisements, but AAA refused to pay. In January 1995, with AAA’s agreement, RCI added New Jersey to its territory because RCI believed that New Jersey territory included the Hertz Rental Company, whose headquarters were in New Jersey.
 

 Later in 1995, RCI began a “media buying program” by instituting a “travel planner.” RCI provided the travel planner to AAA under an oral agreement separate from the 1992 publisher’s advertising agreement. Under the travel planner, RCI purchased advertising space in
 
 AAA World,
 
 sold advertisements in the advertising space, and then submitted the multi-advertisement copy to AAA. AAA paid RCI a commission on this advertising. AAA discontinued the travel planner effective January 1997.
 

 Also, in 1995, the title of
 
 AAA World
 
 changed to
 
 Car & Travel.
 
 When AAA Club Services, Inc. was formed in 1996, it continued to use
 
 Car & Travel
 
 as its member publication. In mid-1996, Harold Yankelevitz replaced Hamill as national advertising manager. In January 1997, AAA Club Services, Inc. stopped using
 
 Car & Travel
 
 and began publishing
 
 Journey.
 
 Bob Bradley and Mark Titel, who were employees of ACSC, the parent of AAA Club Services, Inc., acted as consultants on the publication of
 
 Journey.
 
 Later in 1997, AAA stopped publishing
 
 Car & Travel.
 

 d. RCI’s Breach of Contract Claim
 

 AAA canceled the contract with RCI effective January 1997. Shortly thereafter, RCI sued AAA, AAA Club Services, Inc., and other parties not before us in this appeal. RCI alleged that AAA breached the agreement by failing to pay commissions on “in house,” “preferred provider,” and the Hertz accounts.
 

 RCI’s breach of contract theory was that under the agreement, the territory assigned to RCI was exclusive and all the accounts in each geographic area were assigned to RCI. Therefore, according to RCI, no other advertising agency had the right to sell any advertisements, and RCI was entitled to receive commissions on every advertisement placed by any advertiser or sold in RCI’s territory, whether RCI sold the advertisement or it was sold by another advertising representative or by AAA itself.
 

 e.
 
 RCI’s Other Claims
 

 RCI also asserted a claim against AAA for fraudulent inducement for misrepresenting that the “house accounts,” “preferred provider accounts,” and the Hertz accounts were part of RCI’s territory. As damages, RCI claimed it was entitled to $10,000 as a termination fee plus unpaid sales commissions, which RCI estimated at trial to total about $2 million. RCI also requested attorney’s fees for both the “termination fee” and the breach of contract claim.
 

 RCI asserted a claim for tortious interference with contract against AAA Club
 
 *870
 
 Services, Inc. RCI alleged that Titel and Bradley, as agents of AAA Club Services, Inc., tortiously interfered with the RCI-AAA agreement by demanding that AAA terminate the agreement.
 

 f. Pretrial
 

 Before trial, the trial court granted partial summary judgment in RCI’s favor by ruling that RCI was entitled to a “termination fee” under paragraph 2(B) of the agreement. Also before trial, the trial court ruled that paragraphs 1(D) and 5(A) of the agreement were ambiguous.
 
 [1]
 
 Subsequently, RCI amended its pleading by asserting that paragraph 1(E) was ambiguous.
 
 [2]
 

 g. The Jury Charge
 

 Over RCI’s objection, the jury charge submitted the issue of the meaning of paragraphs 1(A), 1(D), 1(E), 1(F), 4, and 5(A) and whether the contested advertisements were included in the agreement as modified, re-aligned, or re-assigned.
 
 [3]
 
 The charge also submitted RCI’s contract claims, tort claims, and RCI’s requests for attorney’s fees pursuant to the “termination fee” and breach of contract. The jury found that the contested accounts were not part of the agreement. The jury did not reach the issues relating to the breach of the agreement claim and found against RCI on all other issues.
 

 RCI filed a motion for judgment notwithstanding the verdict and motion for new trial. Both were denied in a written order. This appeal followed.
 

 II. AAA CLAIMS RCI WAIVED RIGHT TO APPEAL
 

 Initially, we address AAA’s assertion that Kincaid expressly waived RCI’s
 
 *871
 
 right to appeal by certain statements during cross-examination.
 

 Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with that right.
 
 Jernigan v. Langley,
 
 111 S.W.3d 153, 156 (Tex.2003) (per curiam);
 
 U.S. Fid. & Guar. Co. v. Bimco Iron & Metal Corp.,
 
 464 S.W.2d 353, 357 (Tex.1971). Waiver can be established by either an express renunciation of a known right or by silence or inaction for so long a period as to demonstrate an intention to yield that known right.
 
 Jernigan,
 
 111 S.W.3d at 156. Although waiver is generally a fact issue, if facts and circumstances are admitted or clearly established, it then becomes a question of law.
 
 Jernigan,
 
 111 S.W.3d at 156. Waiver is largely a matter of intent, and for implied waiver to be found through a party’s actions, intent must be clearly demonstrated by the surrounding facts and circumstances.
 
 Motor Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass’n, Inc.,
 
 1 S.W.3d 108, 111 (Tex.1999).
 

 To show waiver, AAA relies on the following italicized statement by Kincaid during cross-examination regarding the location of the Hertz account:
 

 We’re agreed that they’re in Virginia and New Jersey and/or Florida. We think there’s three territories. We’ve split it half and half. We were just told it was in New Jersey. That’s all we’re saying, it’s on our commission statements, and
 
 if
 
 — whatever
 
 the jury defines, ive will not appeal.
 

 The context of this statement shows that it relates to counsel’s previous questions regarding the jury’s decision as to the location of the Hertz account, not to a waiver of appeal of the jury’s verdict on the entire case. Thus, we cannot agree that this statement is an intentional relinquishment of RCI’s known right to appeal or intentional conduct inconsistent with RCI’s right to appeal.
 
 See Jernigan,
 
 111 S.W.3d at 156;
 
 U.S. Fid. & Guar. Co.,
 
 464 S.W.2d at 357.
 

 III. JURY CHARGE ERROR
 

 In its first issue, RCI contends that the trial court erroneously submitted the question of ambiguity of paragraphs 1(A), 1(E), 1(F), and 4 of the agreement, which the trial court had not found to be ambiguous and for which ambiguity had neither been pleaded nor tried by consent. RCI contends that the submission of these paragraphs is a clear mistake of law which probably caused the rendition of an improper judgment.
 

 a. Standard of Review
 

 Generally, in reviewing a complaint of error in a question submitted to the jury, we employ an abuse of discretion standard.
 
 Dallas County Sheriff's Dep’t v. Gilley,
 
 114 S.W.3d 689, 691 (Tex.App.-Dallas 2003, no pet.) (citing
 
 Tex. Dep’t of Human Servs. v. E.B.,
 
 802 S.W.2d 647, 649 (Tex.1990)). A trial court abuses its discretion if its action is arbitrary, unreasonable, and without reference to any guiding rules or principles.
 
 Id.
 
 The trial court’s clear failure to analyze or apply the law correctly constitutes an abuse of discretion.
 
 Downer v. Aquamarine Operators, Inc.,
 
 701 S.W.2d 238, 241 (Tex.1985). We may not reverse a judgment for error in the submission of jury instructions or questions unless we conclude the error probably caused the rendition of an improper judgment. Tex. R.App. P. 44.1(a)(1);
 
 Gilley,
 
 114 S.W.3d at 691. To determine whether an improper jury charge constitutes reversible error, we consider the pleadings, the evidence, and the charge in its entirety.
 
 Gilley,
 
 114 S.W.3d at 691.
 

 A trial court may not submit a jury question that is neither supported by the pleadings nor tried by consent.
 
 Tex. Indus., Inc. v. Vaughan,
 
 919 S.W.2d 798,
 
 *872
 
 803 (Tex.App.-Houston [14th Dist.] 1996, writ denied). Submitting a jury question that is not supported by the pleadings or tried by consent is an abuse of discretion.
 
 Stephanz v. Laird, 846
 
 S.W.2d 895, 902 (Tex.App.-Houston [1st Dist.] 1993, writ denied);
 
 Eldridge v. Collard,
 
 834 S.W.2d 87, 90 (Tex.App.-Fort Worth 1992, no writ).
 

 Whether a contract is ambiguous is a question of law for the court to decide.
 
 Lopez v. Munoz, Hockema & Reed, L.L.P.,
 
 22 S.W.3d 857, 861 (Tex.2000). Only if the court makes the determination that the contract cannot be given a certain and definite legal meaning, and is therefore ambiguous, can a question of fact be submitted to the jury as to the meaning of the contract.
 
 Gaulden v. Johnson,
 
 801 S.W.2d 561, 564 (Tex.App.-Dallas 1990, writ denied).
 

 b. Discussion
 

 The two issues raised in this case were, first, whether the contract was exclusive, and, second, whether RCI was entitled to commissions on advertisements from its territory regardless of whether RCI actually sold the advertisements. RCI offered a jury question that asked whether the agreement “assigned RCI an exclusive geographic area within which to solicit and service advertising....” Thus, RCI’s jury question did not address the issue of whether RCI had to sell the advertisements or whether any advertisements sold by anyone else in the territory would result in a commission to RCI. The trial court refused RCI’s offered jury question. Instead, the trial court submitted a broader question that combined the two issues of whether RCI’s territory was exclusive and whether RCI needed to sell an advertisement to obtain a commission and included instructions to the jury regarding its interpretation of the two paragraphs RCI requested in its offered question and the four additional paragraphs. Question 1 reads as follows:
 

 Did the agreement between [AAA] and [RCI], as modified or re-aligned or re-assigned include any of the matters listed below?
 

 a. In order for the parties to make an enforceable agreement, there must be an offer and acceptance, and there must be a meeting of the minds on all essential terms of the agreement and a communication that each party has consented to the terms of the agreement. An enforceable agreement may be oral or written.
 

 b. In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties’ unexpressed thoughts or intentions.
 

 i. A “course of dealing” is previous conduct between the parties that indicates the parties’ understanding of their contractual obligations. You may not consider thoughts or intentions that the parties have not expressed to each other.
 

 c. A party’s conduct includes the conduct of another who acts with the party’s authority or apparent authority-
 

 i. Authority for another to act for a party must arise from the party’s agreement that the other act on behalf and for the benefit of the party. If a party so authorizes another to perform an act, that other party is also authorized to do whatever else is proper, usual, and necessary to perform the act expressly authorized.
 

 ii. Apparent authority exists if a party—
 

 
 *873
 
 (1) knowingly permits another to hold himself out as having authority or,
 

 (2) through lack of ordinary care, bestows on another such indications of authority that lead a reasonably prudent person to rely on the apparent existence of authority to his detriment.
 

 Only the acts of the party sought to be charged with responsibility for the conduct of another may be considered in determining whether apparent authority exists.
 

 d. The parties’ 1992 agreement is Plaintiff’s Exhibit 15. All references to specific paragraphs (“¶”) are to Plaintiffs Exhibit 15.
 

 e. Notwithstanding paragraph 10
 
 [4]
 
 of Plaintiffs Exhibit 15, [AAA] and [RCI] could agree to modify their agreement in writing or orally or a combination of both.
 

 f. [AAA] could re-align or re-assign [RCI]’s territory (¶ 1(B))
 
 [5]
 
 without [RCI]’s agreement, if [AAA] did so in an unequivocal notice. If [AAA] did not do so in an unequivocal notice, the parties could have agreed to re-align or re-assign the territory.
 

 g. It is your duty to interpret the following language of the agreement to decide whether the parties’ agreement provided for RCI to receive a commission on advertising it did not participate in selling:
 

 [Paragraphs 1(A), 1(D), 1(E), 1(F), 4, 5(A) were quoted.]
 

 You must decide the Agreement’s meaning by determining the intent of the parties at the time of the agreement. Consider all the facts and circumstances surrounding the making of the agreement, the whole agreement, the interpretation placed on the agreement by the parties, and the conduct of the parties.
 

 Question 1 then listed nineteen separate, specifically identified advertisements, beginning with the Auto Plan advertisements in
 
 AAA World
 
 during 1994-95 and ending with the AAA Auto Club Cellular advertisements in
 
 Car & Travel
 
 during 1995-97. The jury answered “no” to each separate advertisement.
 

 We agree that the submission of paragraphs 1(A), 1(F), 1(E), and 4 to the jury for interpretation was error because RCI did not plead ambiguity as to 1(A), 1(F), and 4, and the trial court did not rule these paragraphs and 1(E) to be ambiguous.
 
 See Tex. Indus., Inc.,
 
 919 S.W.2d at 803;
 
 Stephanz,
 
 846 S.W.2d at 902;
 
 Eldridge,
 
 834 S.W.2d at 90.
 

 RCI claims this error requires reversal since Question 1 submitted a valid theory, that is, the jury’s interpretation of two paragraphs that the trial court found to be ambiguous, and other theories that were not valid. Because of the jury’s negative answers to Question 1 as to interpretation of the agreement, the jury did not reach the questions as to RCI’s claim that AAA breached the agreement, which were conditioned on an affirmative answer to Question 1. RCI relies on
 
 Crown Life Ins. Co. v. Casteel,
 
 22 S.W.3d 378, 388-90 (Tex.2000), to support its argument that it is impossible to determine whether the jury’s negative answers were based on the erroneous submission of the ambiguity issue, a finding that the nineteen separate advertisements were not included in the agree
 
 *874
 
 ment, or a finding that the agreement was modified, re-aligned, or re-assigned. In
 
 Casteel,
 
 the appellant/defendant sought to set aside the jury’s answer to a broad-form question that submitted both valid and invalid liability theories. Since a reviewing court could not tell which theories the jury relied on to reach its verdict, the submission was error and probably caused an improper verdict.
 

 Casteel
 
 does not apply. Here, there was no harm from a broad-form submission. AAA argues that RCI presented evidence throughout the trial regarding the meaning of the four paragraphs, which RCI now contends are not ambiguous. AAA contends that the issue of the ambiguity of these four paragraphs was tried by consent. RCI responds that the evidence merely explained how these paragraphs fit together to support RCI’s position.
 

 Assuming, without deciding, that the issue of ambiguity as to the four paragraphs was not tried by consent, we still conclude there was no harm. Question 1 submitted the issue of whether RCI had to actually sell an advertisement to obtain a commission (an issue not addressed in RCI’s offered question), along with the issue of exclusivity, so that the jury could consider both issues. Additionally, the four paragraphs were discussed extensively in both sides’ evidence. Question 1 simply allowed RCI to freely make its argument as to the contract provisions, consistent with its trial presentation, and allowed the jury to consider those paragraphs RCI argued were relevant to the meaning of the agreement. AAA, not RCI, argued that no part of the agreement was ambiguous. We conclude that Question 1 as submitted by the court tended to favor RCI, not hinder it. Accordingly, we decide the first issue against RCI.
 

 IV. TRIAL COURT’S AMBIGUITY RULING
 

 In its second issue, RCI contends that the trial court erred in its pretrial order that paragraphs 1(D) and 5(A) are ambiguous. However, RCI pleaded in its seventh amended petition that these paragraphs were ambiguous. RCI repeated this allegation in its eighth amended petition, which was its live trial pleading. In addition, RCI proposed a jury question regarding the interpretation of paragraphs 1(D) and 5(A). A party that asks for a certain type of relief cannot complain on appeal if that relief is granted.
 
 Nesmith v. Berger,
 
 64 S.W.3d 110, 119 (Tex.App.-Austin 2001, pet. denied) (citing
 
 Litton Indus. Prods., Inc. v. Gammage,
 
 668 S.W.2d 319, 321-22 (Tex.1984)). Accordingly, we conclude RCI waived its complaint on appeal that the trial court erred in ruling the contract ambiguous by requesting this same ruling from the trial court. We decide the second issue against RCI.
 

 V. SUFFICIENCY OF THE EVIDENCE SUPPORTING JURY’S ANSWERS
 

 In issues three and six, RCI contends the evidence is legally and factually insufficient to support the jury’s award of zero attorney’s fees for a “termination fee.” In issue four, RCI contends the jury’s failure find that the agreement included the nineteen advertisements was against the great weight and preponderance of the evidence. In issues five and seven through nine, RCI contends the jury’s negative answers to the questions regarding RCI’s claims for intentional interference with the agreement, fraud, attorney’s fees for the breach of contract claim, and damages were against the great weight and preponderance of the evidence.
 

 
 *875
 

 a. Standard, of Review
 

 When a party attacks the legal sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue.
 
 Dow Chem. Co. v. Francis,
 
 46 S.W.3d 237, 241 (Tex.2001) (per curiam). In reviewing a “matter of law” challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary.
 
 Id.
 
 If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law.
 
 Id.
 
 The point of error should be sustained only if the contrary proposition is conclusively established.
 
 Id.
 

 When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence.
 
 Id.
 
 at 242. The court of appeals must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust.
 
 Id.
 

 The factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony.
 
 Golden Eagle Archery, Inc. v. Jackson,
 
 116 S.W.3d 757, 761 (Tex.2003). The factfinder may believe one witness and disbelieve another and resolve inconsistencies in testimony.
 
 McGalliard v. Kuhlmann,
 
 722 S.W.2d 694, 697 (Tex.1986). When enough evidence is before the factfinder that reasonable minds could differ on the meaning of the evidence, or the inferences and conclusions to be drawn from the evidence, the court of appeals may not substitute its judgment for that of the factfinder.
 
 Herbert v. Herbert,
 
 754 S.W.2d 141, 145 (Tex.1988). The court of appeals may not reverse merely because it concludes that the evidence preponderates toward a different answer.
 
 Id.
 

 b. Interpretation of the Agreement
 

 In its fourth issue, RCI contends that the jury’s negative answers to sub-parts (1) through (19) of Question 1, which specifically asked if various advertisements for Hertz, Auto Plan, Auto Insider, and other advertisements were included in the agreement, was contrary to the great weight and preponderance of the evidence.
 

 Kincaid testified that RCI was entitled to payment for commissions on all the listed accounts because the agreement was exclusive and included all advertising accounts located within RCI’s territory. Kincaid also testified that individual accounts were not considered “territory” and could not be re-aligned or re-assigned on an account-by-account basis and that no accounts were ever specifically or properly excluded.
 

 There was evidence that AAA re-aligned and re-assigned accounts within RCI’s territory, specifically the “house accounts” and “preferred provider accounts.” The jury could have determined that, contrary to RCI’s theory, the agreement did not prohibit account-by-account re-assignment. Accordingly, the jury could have rejected RCI’s theory that the agreement was exclusive in terms of preventing some accounts in RCI’s territory from being reassigned.
 

 Moreover, RCI’s argument under this issue and its record references ignore the second issue addressed by Question 1, that is, whether RCI had to sell an advertisement to receive a commission. It is undisputed that AAA paid RCI for some advertisements that were from advertisers in RCI’s territories, but which RCI did not sell. It is undisputed that RCI did not
 
 *876
 
 sell any of the nineteen advertisements. In 1994, RCI told its subrepresentatives that AAA had designated Auto Plan, Auto Insider, and Hertz as “house accounts.” Regarding the Hertz account, there was evidence that the advertising copy RCI submitted to AAA for publication in
 
 AAA World,
 
 called an “insertion order,” showed the advertisement originated from Virginia, which was not an RCI territory, and that Hertz was a “preferred supplier account.” There was evidence that Show Your Card and Save was a “preferred supplier account.” These advertisements were for services available to members through deals negotiated with those companies. As to the AAA entities, there was evidence that these advertisements were for AAA’s own services. Regarding the internal AAA ads, there was evidence that RCI claimed payment because AAA headquarters were in Florida, an RCI territory. There was evidence that any payments amounts were actually bookkeeping entries crediting transfers of payments between an AAA department and the magazine.
 

 Even though house accounts and preferred provider accounts are not mentioned in the agreement, paragraph 5(A) provides that RCI would be paid “on the net dollar amount of advertisements sold by the Representative [that is, RCI] to advertisers in the Territory.” Thus, the jury could have rejected RCI’s theory that “sold by the Representative” meant that RCI would receive a commission on the value of any advertisement published from an advertiser in RCI’s territory and accepted AAA’s theory that RCI had to actually sell the advertisement to be entitled to a commission or that RCI would not receive a commission on an advertisement for which AAA itself received no payment.
 

 Because the evidence was conflicting on whether the nineteen advertisements were included in the agreement, according to the definitions and instructions in Question 1, we conclude the jury’s negative answer is not against the great weight and preponderance of the evidence. We decide adversely to RCI on its fourth issue. Because of our disposition of the fourth issue, we need not address the fifth issue, which challenges the factual sufficiency of the jury’s answer of zero as to the reasonable attorney’s fees related to RCI’s breach of contract claim.
 

 c.
 
 Attorney’s Fees
 

 In its third issue, RCI contends that the trial court erred in entering judgment against RCI based on the jury’s answer of zero to Question 5 regarding attorney’s fees because RCI proved its entitlement to attorney’s fees as a matter of law. In its sixth issue, RCI argues that the jury’s answer to Question 5 is contrary to the great weight and preponderance of the evidence.
 

 RCI moved for summary judgment on the issue of its entitlement to the $10,000 final commission, or termination fee, pursuant to paragraph 2(B) of the agreement. The trial court granted partial summary judgment in RCI’s favor by ruling that RCI was entitled to $10,000 under paragraph 2(B). The trial court’s order also stated that RCI was “entitled to recover its reasonable and necessary attorney’s fees incurred in the pursuit and/or collection of this breach of contract claim.”
 

 Question 5 asked: “What is a reasonable fee for the necessary services of [RCI’s] attorney in this case related to the ¶ 2(b) ‘termination fee’ claim?” The question then defined “reasonable and necessary attorney’s fees” and listed eight factors that should be considered when considering the reasonableness of a fee. The jury answered zero.
 

 Section 38.001(8) of the civil practice and remedies code permits a pre
 
 *877
 
 vailing party to recover attorney’s fees in a suit on a contract. Tex. Civ. PRAC. & Rem. Code Ann. § 38.001(8) (Vernon 1997);
 
 Serv. Fin. v. Adriatic Ins. Co.,
 
 46 S.W.3d 436, 461 (Tex.App.-Waco 2001),
 
 judgm’t vacated w.r.m.,
 
 51 S.W.3d 450 (Tex.App.Waco 2001, no pet.),
 
 disapproved of on other grounds by Brown v. De La Cruz,
 
 48 Tex. Sup.Ct. J. 164, 168 n. 40, 2004 WL 2754651, at *5 n. 40 (Tex. Dec. 3, 2004). When a prevailing party in a breach of contract suit seeks attorney’s fees, an award of reasonable fees is mandatory under section 38.001 if there is proof of the reasonableness of the fees.
 
 Id.; World Help v. Leisure Lifestyles, Inc.,
 
 977 S.W.2d 662, 683 (Tex.App.-Fort Worth 1998, pet. denied);
 
 Caldwell & Hurst v. Myers,
 
 714 S.W.2d 63, 65-66 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.). In such a case, a jury does not have discretion to simply deny an award of attorney’s fees if any were properly proven.
 
 Cale’s Clean Scene Carwash, Inc. v. Hubbard,
 
 76 S.W.3d 784, 787 n. 4 (Tex.App.-Houston [14th Dist.] 2002, no pet.). As a factual matter, a zero award for attorney’s fees is proper if the evidence (1) failed to prove (a) that any attorney’s services were provided, or (b) the value of the services provided; or (2) affirmatively showed that no attorney’s services were needed or that any services provided were of no value.
 
 Id.
 
 at 787. Uncontroverted testimony by an interested witness concerning attorney’s fees may establish a fact as a matter of law.
 
 Id.
 

 Tom Melsheimer, an attorney, testified that $76,764 was a reasonable amount of attorney’s fees for the $10,000 claim. He detailed the protracted procedural history of RCI’s claim. Cross-examination on this issue consisted of questions whether RCI could have obtained the $10,000 through a simple procedure such a motion for summary judgment. Melsheimer agreed hypothetically but disagreed that those facts occurred here. AAA produced no evidence that a lesser amount of fees was reasonable in this case. We conclude that this testimony established that attorney’s services were provided and the value of those services.
 

 Nevertheless, appellees contend that RCI is not entitled to these attorney’s fees because RCI failed to prove presentment. To recover attorney’s fees under Chapter 38, a claimant (1) must be represented by an attorney; (2) he must present the claim to the opposing party or to a duly authorized agent of the opposing party; and (3) before the expiration of the thirtieth day after the claim is presented, the opposing party must not tender payment for the just amount owed. Tex. Civ. PRAC. & Rem. Code Ann. § 38.002 (Vernon 1997).
 

 The record shows that, beginning in 1994, RCI sent letters to AAA complaining that it was not being paid commissions on the “house accounts” in RCI’s territories. We conclude that these communications constitute presentment under section 38.002.
 

 We conclude that RCI proved its entitlement to attorney’s fees of $75,764 as a matter of law.
 
 See Cale’s Clean Scene Carwash, Inc.,
 
 76 S.W.3d at 787 & n. 4. Accordingly, we decide RCI’s third issue in its favor. Because RCI proved its entitlement to this amount of attorney’s fees as a matter of law, we need not address RCI’s sixth issue.
 

 d. Intentional Interference with the Agreement
 

 In its seventh issue, RCI challenges the jury’s negative answer to Question 6 regarding RCI’s claim of intentional interference with the agreement, saying it is contrary to the great weight and preponderance of the evidence. Question 6 asked: “Did AAA Club Services, Inc. intentionally interfere with the agreement you found in answer to Question No. 1?”
 
 *878
 
 Question 6 included the following instruction: “Interference is intentional if committed with the desire to interfere with the contract or with the belief that interference is substantially certain to result.” Question 6 also included an instruction regarding agency.
 

 The elements of tortious interference with a contract are: (1) the existence of a contract subject to interference; (2) willful and intentional interference; (3) interference that proximately caused damage; and (4) actual damage or loss.
 
 Powell Indus., Inc. v. Allen,
 
 985 S.W.2d 455, 456 (Tex.1998).
 

 RCI contends that the testimony shows that Bradley and Titel acted as agents of AAA Club Services, Inc. They said they would “handle” the Kincaids and RCI shortly before the agreement was terminated. However, the record reflects that this testimony about “handling” RCI related to RCI’s submission of travel planner advertisements for publication in
 
 Journey
 
 magazine. RCI did not have a contract regarding
 
 Journey.
 
 There was evidence that RCI’s travel planner was published in the Texas/New Mexico edition of
 
 Car & Travel
 
 and that RCI expected travel planner to be published in
 
 Journey
 
 after the sale of these divisions to ACSC. There was testimony that Bradley urged AAA to discontinue the travel planner. There was also testimony that the travel planner was unprofitable for AAA and Yankelevitz informed RCI in June 1996 that the travel planner would stop. Specifically, in a letter dated June 4, 1996, Yankelevitz informed Kincaid that travel planner would “not be continued into 1997.” Yankelevitz testified that he and his predecessor alone decided to stop the travel planner program and that Bradley and Titel played no role in that decision. Thus, there was conflicting evidence as to Bradley’s and Titel’s actions in relation to the termination of RCI’s travel planner agreement with AAA.
 

 RCI argues that Bradley sent a letter to Yankelevitz mere days before Yankelevitz terminated the publisher’s agreement, which is evidence of interference. However, the evidence shows that Yankelevitz decided to terminate the agreement in order to hire more representatives, rather than rely on a three-person company to cover the extent of RCI’s territory. The jury resolves any conflicts in the testimony. Accordingly, we cannot conclude that the jury’s answer to Question 6 is against the great weight and preponderance of the evidence. Issue seven is decided against RCI.
 

 e. Fraud
 

 In its eighth issue, RCI argues that the jury’s negative answer to Question 11 regarding the fraud claim was contrary to the great weight and preponderance of the evidence. Question 11 asked: “Did [AAA] commit fraud against [RCI] concerning commissions to be paid for newly assigned Territories?” Question 11 included an instruction regarding a corporation’s responsibility for fraud committed by an individual in a managerial capacity. The charge gave two definitions of “fraud.” First, the charge defined “fraud” as:
 

 a. A party makes a material misrepresentation,
 

 b. The misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion,
 

 c. The misrepresentation is made with the intention that it should be acted on by the other party, and
 

 d. The other party acts in reliance on the misrepresentation and thereby suffers injury.
 

 “Misrepresentation” was defined as “a false statement of fact of a promise of future performance with an intent not to
 
 *879
 
 perform as promised.” Second, the charged defined “fraud” as:
 

 a. A party conceals or fails to disclose material facts within the knowledge of that party,
 

 b. The party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth,
 

 c. The party intends to induce the other party to take some action by concealing or failing to disclose the fact, and
 

 d. The other party suffers injury as a result of acting without knowledge of the undisclosed fact.
 

 A cause of action for fraud requires proof of a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury.
 
 Formosa Plastics Corp. USA v. Presidio Eng’rs & Contractors, Inc.,
 
 960 5.W.2d 41, 47 (Tex.1998).
 

 RCI contends that the evidence shows that AAA committed fraud when it promised certain commissions to RCI when RCI assumed new territory under the agreement. Specifically, RCI contends the Prepaid Commission Report, which it reviewed in 1993 before accepting new territory, was a misrepresentation of the commissions RCI would receive because AAA had determined that it would not pay commissions on the house accounts. However, there was evidence that RCI sought to add new territory by becoming AAA’s national advertising representative before RCI reviewed the Prepaid Commission Report. Accordingly, the evidence is conflicting whether RCI relied on any misrepresentation in that report in its decision to assume new territory under the agreement. The eighth issue is decided adversely to RCI.
 

 VI. CONCLUSION
 

 Because of our disposition of RCI’s issues regarding liability, we need not address RCI’s ninth issue, in which it argues that the failure of the jury to award damages for the contract and tort claims is against the great weight and preponderance of the evidence. Because of our disposition of RCI’s third issue, we reverse the final judgment of the trial court as to the issue of attorney’s fees for the “termination fee” and render judgment that RCI is entitled to $75,764 in attorney’s fees. The final judgment is affirmed as to other claims by RCI against AAA.
 

 VII. MOTION FOR REHEARING
 

 In its motion for rehearing, RCI contends that it should be awarded all of its trial and appellate costs. We grant RCI’s motion for rehearing in part and deny it in part.
 

 First, RCI claims that it prevailed on appeal since it recovered its attorney’s fees. Therefore, pursuant to rule of appellate procedure 43.4, it contends since it was the prevailing party on appeal, we must tax the costs on appeal against AAA.
 
 See
 
 Tex.R.App. P. 43.4. Also, relying on rule of civil procedure 139, RCI argues that since it was the prevailing party we must award it all trial court costs.
 
 See
 
 Tex.R. Civ. P. 139 (providing, in part: “If the judgment of the court above be in favor of the party appealing and for more than the original judgment, such party shall recover the costs of both courts....”). In support of its argument as to trial court costs, RCI cites several cases in which the court of appeals applied rule 139 to award trial court costs to an appellant since it recovered more on appeal than it had recovered at the trial court.
 
 [6]
 
 As to costs on appeal, AAA con
 
 *880
 
 tends that costs should not be awarded to RCI since, it recovered on only a minor portion of the relief it requested and cannot be considered the prevailing party. Additionally, AAA contends that the trial court’s assessment of costs against RCI cannot be disturbed since the trial court has not been shown to have abused its discretion.
 

 We conclude that neither party has suggested the proper basis for our authority to award costs after an appeal. Our research discloses that two rules direct how we are to award costs after an appeal. Rule of civil procedure 139, adopted in 1941, sets out four rules that direct how costs of both trial and appeal are to be taxed, depending on the difference between the result for appellant on appeal and in the trial court.
 
 [7]
 
 However, rule 139 does not address fine distinctions which might occur in a complex case, where, as here, the appellant did not prevail on any claims at the trial court, but prevailed on one discrete issue of attorney’s fees on appeal. The more recently promulgated rule of appellate procedure 43.4 provides this Court with latitude within which to award costs in a fashion which is not “all or nothing.” Rule 43.4 provides for judgment for costs in civil cases:
 

 In a civil case, the court of appeal’s judgment should award to the prevailing party the appellate costs — including preparation costs for the clerk’s record and the reporter’s record — that were incurred by that party. But the court of appeals may tax costs otherwise as required by law or for good cause.
 

 Tex.R.App. P. 43.4.
 

 When we read the plain language of both rule of civil procedure 139 and rule of appellate procedure 43.4, we conclude these rules can be harmonized to give effect to both.
 
 See Burke v. Union Pac. Res. Co.,
 
 138 S.W.3d 46, 75 (Tex.App.-Texarkana 2004, pet. filed). It is clear that courts of appeals have considerable discretion in taxing costs on appeal. While the first sentence of rule 43.4 directs an appellate court to award costs on appeal to the prevailing party, the second sentence gives an appellate court discretion to “tax costs otherwise as required by law or for good cause.” Important to our decision is the language of the second sentence where it addresses taxation of “costs,” not simply “appellate costs.” Also, the rule provides us the alternative of following other provisions of the law on taxing costs “or” we may award costs “for good cause.” We conclude this, language allows us to exercise our discretion to determine how “costs” shall be awarded for an appeal as well as for trial in recognition of the result on appeal.
 

 First, we address the award of costs on appeal. The relief requested in the trial court by RCI includes damages for breach of contract, the $10,000 termi
 
 *881
 
 nation fee, and attorney’s fees. RCI did not recover on any claims in the trial court. We have determined that RCI is not entitled to damages for breach of contract, but RCI has prevailed on the right to attorney’s fees based on recovery of the termination fee. RCI’s attorney’s fees recovery is not insignificant in amount. However, it is much less substantial than the many millions of dollars in relief RCI requested in its suit. Nevertheless, there is good cause for RCI to recover some of its costs on appeal. Accordingly, we have concluded that in this hard fought case it is equitable and just and good cause exists to allocate the costs on appeal so that RCI recovers twenty percent of those costs, which we have calculated is $4,160 of the costs of the clerk’s and reporter’s records.
 
 See
 
 Tex.R.App. P. 43.4;
 
 In re A.B.B.,
 
 785 S.W.2d 828, 834 (Tex.App.-Amarillo 1990, no writ) (applying percentage allocation of costs on appeal).
 

 Second, we conclude that some of the taxable costs at the trial court level should also be awarded to RCI in view of our disposition of this appeal. We have before us in the record a listing of the taxable trial costs. However, this record will not provide us with sufficient facts to evaluate the proper taxation of costs at the trial court level to reflect the result on appeal. As a general rule, this Court will not initially find facts. Accordingly, the trial court must hear evidence and conclude how costs should be taxed in view of the result on appeal.
 

 CONCLUSION AS TO MOTION FOR REHEARING
 

 RCI’s motion for rehearing is granted in part and denied in part. RCI shall recover twenty percent of the costs of appeal, or $4,160. We reverse the final judgment as to costs of the trial court and remand the issue of allocation of trial court costs between the parties to the trial court for the sole purpose of holding a hearing to tax costs for good cause based upon the result on appeal.
 
 See
 
 Tex.R.App. P. 43.4; Tex.R. Crv. P. 141;
 
 Price Constr., Inc. v. Castillo,
 
 147 S.W.3d 431, 443 (Tex.App.-San Antonio 2004, no pet.) (supplemental opinion on motion for en banc consideration).
 

 [1]
 

 . Paragraph 1(D) provided:
 

 Advertising accounts located within the Territory’s geographic area are assigned to [RCI], The advertiser’s name and location shall be determined by the parties named and described on the advertising contract or insertion order.
 

 Paragraph 5(A) provided:
 

 [AAA] agrees to pay [RCI] a twenty per cent (20%) commission on the net dollar amount of advertisements sold by [RCI] to advertisers in the Territory. The net shall be based on current published advertising rates less any [AAA's] rate discounts, special services fees, and advertising agency commission.
 

 [2]
 

 . Paragraph 1(E) provided:
 

 TEAM ACCOUNT RULE: In the event that any portion of the Territory's geographic area is also assigned to another representative, any account located in that portion will be designated a "Team Account” (see 5D). [RCI] agrees to solicit and service Team Accounts in cooperation with other assigned representatives.
 

 [3]
 

 . Paragraph 1(A) provided:
 

 [AAA] hereby contracts with [RCI] for the purpose of soliciting and selling advertising space in the publication
 
 AAA World.
 
 [RCI] will solicit and service advertising as follows: a.) for specific edition sections, and b.) in a geographic area, the sum of "a” and "b” being hereafter referred to as the "Territory” (see Attachment A).
 

 Attachment A was a "rate card” that changed each year and listed the "designated advertising sales territories” effective at the beginning of the year.
 

 Paragraph 1(F) provided:
 

 SPLIT ACCOUNT RULE: Should an advertising contract or insertion order determined to be in the Territory also name an agency or agency's client located outside the Territory, the advertiser will be designated "Split Account” (see 5D). [RCI] agrees to solicit and service Split Accounts in cooperation with other assigned representatives.
 

 Paragraph 4 provided:
 

 INVOICES. An advertisement is considered sold only upon publication. [AAA] will invoice advertisers for advertisements that [RCI] has sold and will be responsible for collection activities and any uncollectible revenues (see 5C). Upon request by [RCI], [AAA] shall provide a copy of any invoice.
 

 [4]
 

 . Paragraph 10 is titled "Revisions to the Agreement” and provided: "This Agreement may be altered at any time provided that all modifications are in writing and agreed to by both parties.”
 

 [5]
 

 . Paragraph 1(B) provided: "[AAA] establishes the Territory and may re-align and reassign Territory at any time.”
 

 [6]
 

 .
 
 See, e.g., Stalcup v. Eastham,
 
 330 S.W.2d 237, 240 (Tex.Civ.App.-El Paso 1959, writ ref’d n.r.e.) ("Since by this opinion we have
 
 *880
 
 enlarged the judgment, costs in both courts shall be assessed against appellees.”).
 

 [7]
 

 . Rule 139 comes within section 6 of the rules of civil procedure, which is titled "Costs & Security Therefor.” Rule 139 is titled "On Appeal & Certiorari” and provides:
 

 When a case is appealed, if the judgment of the higher court be against the appellant, but for less amount than the original judgment, such party shall recover the costs of the higher court but shall be adjudged to pay the costs of the court below; if the judgment be against him for the same or a greater amount than in the court below, the adverse parly shall recover the costs of both courts. If the judgment of the court above be in favor of the party appealing and for more than the original judgment, such party shall recover the costs of both courts; if the judgment be in his favor, but for the same or a less amount than in the court below, he shall recover the costs of the court below, and pay the costs of the court above.
 

 Tex.R. Civ. P. 139.