NO. 07-05-0118-CR





IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



APRIL 7, 2005
 

_____________________________



Ex parte ROGER D. PFEIL, 


 

 Appellant

_________________________________



FROM THE 154TH DISTRICT COURT OF LAMB COUNTY;



NO. 16,508; HON. FELIX KLEIN, PRESIDING


_______________________________



Order of Dismissal


_______________________________



Before QUINN, REAVIS, and CAMPBELL, JJ.

 Roger D. Pfiel appeals from an order dismissing his application for writ of habeas
corpus. The writ was sought to obtain release from the purported restraint of Bruce Peel,
mayor of Littlefield, Texas. Peel had moved for dismissal, contending that the trial court
lacked jurisdiction over the proceedings. The trial court granted the motion. We now
dismiss the appeal for lack of jurisdiction.

 One may not appeal from an order denying a writ of habeas corpus unless the order
arose after a hearing on the merits and the trial court denied the application on the merits. 
Ex parte Hargett, 819 S.W.2d 866, 868 (Tex. Crim. App. 1991). Next, granting a motion
to dismiss due to the absence of jurisdiction is not a ruling on the merits. See Bland Indep.
Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000); see also City of Lubbock v. Rule, 68
S.W.3d 853, 857 (Tex. App.-Amarillo 2002, no pet.). So because the trial court dismissed
the appeal due to the lack of jurisdiction, we ourselves have no jurisdiction over the appeal. 
Accordingly, the appeal is dismissed for want of jurisdiction.

 


 Brian Quinn

 Justice


Do not publish.


 



tial summary judgment, these and other issues of\
reimbursement and offset were submitted for trial.
\
'

var WPFootnote8 = ' Following an alleged default in payment, Systems & Services Technology, Inc.,\
handled repossession for the lienholder of a 2000 Ford pickup. Although titled in Brent’s\
name, the parties agreed in the February 2003 contract that the pickup was a partnership\
asset. Field agreed in the contract to make the payments on the pickup, or cause the\
partnership to do so.
\
'

var WPFootnote9 = '  In relevant part, paragraph 3 provided: \
                                In the event the farm is sold, and [Field] is unable to sell the tractor and other\
farm equipment to the Purchaser of the farm, [Field] will also be allowed, as\
an offset against the $400,000.00 reimbursement described in Paragraph 5,\
an amount equal to one-half (½) of any payments that are required to be\
made to Case Credit Corporation in order to obtain a release of the Case\
leases for the tractor and other farm machinery.
\
'

var WPFootnote10 = ' In the related security agreement, Brent and her husband agreed that their\
personal liability for the Maltese Cross claim was joint and several, again without\
expressed reference to a claim against Field for reimbursement. \
'

var WPFootnote11 = ' On the sale of the ranch, Field paid Maltese Cross, pursuant to the assignment,\
$182,498.72.
\
'

var WPFootnote12 = ' The marital relationship alone does not give rise to an agency relationship\
between spouses. Tex. Fam. Code Ann. § 3.201(c) (Vernon 2006).
\
'

var WPFootnote13 = ' This amount is inclusive of and not in addition to the $55,634.88 awarded in the\
trial court’s judgment.
\
'

var WPFootnote14 = ' See Hudson v. Wakefield, 711 S.W.2d 628, 630 (Tex. 1986); Hansen v. Acad.\
Corp., 961 S.W.2d 329, 331 (Tex.App.–Houston [1st Dist.] 1997, pet. denied); cf. In re\
Marriage of Stein, 190 S.W.3d 73, 75 (Tex.App.–Amarillo 2005, no pet.) (when an\
appellate court remands a case and limits a subsequent trial to a particular issue, the trial\
court is restricted to a determination of that particular issue).
\
'

function WPShow( WPid, WPtext )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'visible'" );
 else
 {
 if( floatwnd == 0 || floatwnd.closed )
 floatwnd = window.open( "", "comment", "toolbars=0,width=600,height=200,resizable=1,scrollbars=1,dependent=1" );
 floatwnd.document.open( "text/html", "replace" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( "\r\n" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( WPtext );
 floatwnd.document.write( '
Close');
 floatwnd.document.write( "
" );
 floatwnd.document.close();
 floatwnd.focus();
 }
}

function WPHide( WPid )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'hidden'" );
}







NO. 07-08-0065-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

DECEMBER 30, 2008 

______________________________


ELIZABETH C. BRENT, APPELLANT

v.

MARTHA C. FIELD, J & J CATTLE FAMILY
LIMITED PARTNERSHIP, AMERICAN EXPRESS
TRAVEL RELATED SERVICES COMPANY, AND
THOMAS & WATSON TRUCKING, INC., APPELLEES

_________________________________

FROM THE 69TH DISTRICT COURT OF HARTLEY COUNTY;

NO. 4300 H; HON. RONALD E. ENNS, PRESIDING

_______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
OPINION
          Presenting eleven issues, Elizabeth C. Brent appeals from the trial court’s judgment
in her breach of contract and declaratory judgment action against her sister Martha C.
Field, J & J Family Limited Partnership, Thomas & Watson Trucking, Inc., and American
Express Travel Related Services Company, Inc. Brent’s claims arise from a contract by
which she sold her interest in family business entities to Field.
          We will reverse and render in part, vacate in part, and otherwise affirm the judgment.
We will order a limited remand for calculation of prejudgment interest and for an award of
reasonable attorney’s fees. 
Background
          Brent and Field inherited the Houghton Ranch in Hartley County from their mother. 
In 1995, Brent and Field conveyed the property to J & J Cattle Family Limited Partnership,
a limited partnership they created. Through the limited partnership and other entities Brent
and Field carried on the ranching operation and other business.


 Brent’s husband R. P.
Brent IV and Field’s husband Steve Field also were active in the partnership’s business.
          In the midst of strained economic circumstances, in early 2003 Brent and Field
reached an agreement through which Brent sold her interest in the partnership to Field. 
They memorialized their bargain in a contract of February 11, 2003.


 Paragraphs 2 and 5
of the contract read:
 
2. [Field] shall become a substituted general and limited partner of the
Partnership in place of [Brent] as of the date of the transfer of the partnership
Interest, and [Field] shall also become the President and sole director of JJ
ROUNDUP, INCORPORATED, a Texas corporation. [Field] agrees to protect
and indemnify [Brent] and [Brent’s husband] from liability from any and all
obligations of the Partnership.[


] This Agreement shall be binding on and
inure to the benefit of the parties and their respective heirs, executors,
administrators, assigns and legal representatives.

 
***

 
5. [Brent] will pay the partnership obligation of approximately $800,000.00
which is owed to PNB FINANCIAL BANK out of the sale proceeds. Out of the
initial advance, at least $50,000 will be paid to PNB FINANCIAL BANK. 
[Field] agrees to reimburse [Brent] $400,000.00 LESS a $50,000.00 offset
which represents a capital contribution that was not made by [Brent] and
LESS any other amounts of Partnership funds expended by [Brent] as
general partner of the Partnership for non-partnership purposes which may
have occurred during the two-year period immediately preceding the date of
this instrument. For the same time period, any funds expended or used by
[Field] or STEVE FIELD for non-partnership purposes shall be credited
against the offsets. Any reimbursement will be paid to [Brent] on the earlier
of the date on which the Partnership sells its entire interest in the Ranch, or
February 10, 2006. 

 
 
(Capitalization in original).
          The partnership at times ran its own cattle on the ranch, and from time to time cattle
belonging to Brent’s husband, and Maltese Cross Cattle Company, Ltd. also were pastured
there. Brent’s husband was primarily responsible for care of cattle on the ranch. In early
2003, Maltese Cross demanded compensation from the partnership for missing cattle and
overpayment of fees under its pasturage agreement with the partnership. A March 11,
2003, agreement entitled “Assignment Agreement and Release” (which we will refer to as
the Maltese Cross assignment) fixed the amount of the Maltese Cross obligation at
$281,529. 
          In pertinent part, the Maltese Cross assignment provided: 
1. As the result of a series of transactions between Maltese Cross and one
or more of the entities described above and collectively referred to as JJ
Cattle[


], JJ Cattle has become indebted to Maltese Cross. All disputes
regarding the amount of this debt have been resolved as a result of
negotiations giving rise to this Agreement. It has been agreed that the
amount of the debt in question is $281,529.00.

 
          ***

3. Reference is made below to that certain “Agreement For Sale Of Limited
Partnership Interest,” dated February 11, 2003 between Elizabeth C. Brent,
as “Seller” and Martha C. Field, as “Purchaser” (the “Sale Agreement”). 
Pursuant to the Sale Agreement, Elizabeth C. Brent has agreed to sell to
Martha C. Field all her interest in JJ Cattle.

 
          ***

 
4. Pursuant to the terms of the Sale Agreement, Elizabeth C. Brent will
receive an initial cash payment, in the amount provided in the Sale
Agreement, on or before March 10, 2003 (the “Initial Payment”). Further,
pursuant to the Sale Agreement, Elizabeth C. Brent has the right to obtain a
reimbursement payment, as described in paragraph 5 of the Sale Agreement
on or before February 10, 2006 (the “Reimbursement Payment”).

 
5. [Brent and her husband] by execution of this agreement, do not admit any
personal liability for the indebtedness to Maltese Cross described in
paragraph 1 above. [Brent and her husband] enter into the terms of this
agreement for the purpose of compromise and to buy peace with Maltese
Cross. 

 
TERMS OF AGREEMENT

 
***

3. As collateral and security for payment of the Settlement Note,[


] [Brent]
does hereby assign to Maltese Cross her interest and right to receive all
amounts under the Reimbursement Payment (“the Final Assigned Payment”)
not to exceed the then outstanding obligation under the Settlement Note....

 
***

 
8. The Reimbursement Payment shall be made by [Field], when due under
the Sale Agreement, to the trust account of the law firm of Gibson, Ochsner
& Adkins, LLP. Upon receipt of such payment, the attorneys shall determine
the amount payable to Maltese Cross under the Settlement Note and make
immediate payment thereof to Maltese Cross. Any remaining funds shall be
remitted to [Brent],....

 
9. Notwithstanding any contingencies which may be set forth in paragraph 5
of the Sale Agreement, [Field] does hereby guarantee that the amount
payable as the Final Assigned Payment shall not be less than $170,000.

 
 
          While the ranch was marketed for sale, a dispute arose between Field and Brent. 
It centered chiefly on amounts due Brent on sale of the ranch through the reimbursement
clause of paragraph 5 of their February 2003 contract. As a result, Brent filed suit against
Field and J & J Family Limited Partnership, Thomas & Watson Trucking, Inc., and American
Express Travel Related Services Company, Inc.


 Meanwhile, Field sold the ranch. By
agreement of Brent, Field and J & J, $750,000 of the sale proceeds was placed in an
escrow account with Amarillo National Bank.
          Field obtained a partial summary judgment offsetting sums Brent sought under the
agreement by $244,964.90.


 Following a bench trial, the court orally rendered judgment,
later memorialized in a writing signed January 25, 2008. In part, the judgment divided the
escrowed funds, giving $59,875.43 to Brent, an amount to Thomas & Watson, and the
balance to Field. Brent timely appealed.
Analysis
          Through her first, second, and third issues Brent argues no evidence supported the
trial court’s implicit findings that under paragraph 2 of the February 2003 contract, Field was
not bound to indemnify Brent for the Maltese Cross, American Express, and Systems and
Services Technology, Inc.


 claims. Our resolution of these issues turns on the intention of
the parties expressed in the February 2003 contract and the Maltese Cross assignment. 
          We review a trial court’s construction of an unambiguous contract de novo. MCI
Telecomms. Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 650 (Tex. 1999). We construe
the contract as a matter of law. Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). In
conducting a de novo review, we exercise our own judgment and redetermine each legal
issue. Quick v. City of Austin, 7 S.W.3d 109, 116 (Tex. 1999). When construing a written
contract, the primary concern of the court is ascertaining the true intentions of the parties
as expressed in the instrument. Coker, 650 S.W.2d at 393. To achieve this objective, the
court examines and considers the entire writing in an effort to harmonize and give effect to
all the provisions of the contract so that none are rendered meaningless. Id. No single
provision taken alone is given controlling effect; rather, all the provisions are considered with
reference to the entire instrument. Id. The court takes the intention of the parties from the
instrument itself and not the parties’ present interpretation. Calpine Producer Services, L.P.
v. Wiser Oil Co., 169 S.W.3d 783, 787 (Tex.App.–Dallas 2005, no pet.). Instruments
pertaining to the same transaction may be read together to ascertain the intent of the
parties, even if the parties executed the instruments at different times. Fort Worth Indep.
Sch. Dist. v. City of Fort Worth, 22 S.W.3d 831, 840 (Tex. 2000). 
          From a reading of the February 2003 contract, it is immediately apparent that the
indemnity provision of paragraph 2 was not intended to be absolute. The indemnity
provision flatly states that Field agrees to indemnify Brent and her husband “from liability
for any and all obligations of the partnership.” However, paragraph 3 of the contract
provided circumstances under which Brent would be charged, without indemnification, for
half the partnership’s obligation to Case Credit Corporation.


 More significantly, paragraph
5 of the contract bound Brent to pay the entirety of the partnership’s $800,000 obligation
to PNB Financial Bank and limited the amount of her reimbursement from Field to no more
than $350,000. And Brent’s $350,000 reimbursement under paragraph 5 was subject to
reduction by the amount of any partnership funds expended by Brent during the preceding
two years for non-partnership purposes. It is thus clear the parties contemplated the
existence of partnership obligations not subject to indemnification under paragraph 2. 
          The Maltese Cross assignment, executed a month later by the parties to the contract,
and Brent’s husband and Maltese Cross, made express reference to the contract and
Brent’s paragraph 5 reimbursement right. It made no reference, however, to the paragraph
2 indemnification provision. By the assignment, Brent and her husband bound themselves
to pay the Maltese Cross claim and Brent transferred to Maltese Cross a substantial amount
of her potential reimbursement under paragraph 5. In other words, she assigned money
due her from Field as partial indemnification for paying a partnership obligation, the PNB
Financial Bank debt, to satisfy the claim of Maltese Cross, with no expressed regard or
reference to a claim of indemnification.


 For her part, in the assignment, Field guaranteed
Brent’s reimbursement under paragraph 5 would not be less than $170,000.



          Construing the February 2003 contract and the Maltese Cross assignment together,
we conclude the parties intended the Maltese Cross claim, like other claims identified or
referred to in the contract, was not subject to the indemnification provision of its paragraph
2. 
          Brent had an American Express credit card account which was used for the business
of Romero Creek and the other entities she and Field owned. After February 11, 2003,
Field and her husband chose not to pay the account balance and used the card for further
purchases. Brent made the minimum monthly payment required by American Express. 
Shortly before trial, Field negotiated a resolution of the account with American Express,
disposing of the account balance. At trial, Brent sought and was awarded a “credit” of
$2,599.78 for payments she made on the account. Between Field’s negotiated payment
and the court’s award, Brent was made whole for her American Express claim. Brent’s
claim of damage to her credit reputation as a result of Field’s conduct is not supported by
the evidence.
          As noted, a pickup addressed in the February 2003 contract was repossessed. 
There was testimony that Field did not timely make a payment on the vehicle. Field
countered that she mailed the payment but Brent instructed the lienholder’s agent Systems
and Services, Technology, Inc. to proceed with repossession. Brent contends her credit
reputation was damaged as a result of the default and repossession. However, the record
evidence does not support this contention. Brent’s first, second, and third issues are
overruled.
          The trial court granted Field an offset of $102,460 against Brent’s reimbursement
under paragraph 5 for the allegedly wrongful conduct of Brent’s husband. Through issues
four, five and eight, Brent argues the court’s implicit finding of Field’s entitlement to the
offset is not supported by any evidence. Anything more than a scintilla of evidence is legally
sufficient to support the court’s finding. See Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex.
1996). 
          At trial, there was evidence that Maltese Cross made pasture payments of $102,460
to Brent’s husband which were not remitted to JJ Cattle Company. Field contends the trial
court properly charged Brent with that amount under paragraph 5's authorization for offsets
against Brent’s reimbursement for partnership funds expended by Brent for non-partnership
purposes. But the conduct of Brent, not her husband, is the bargained-for standard of this
provision. The evidence must support a theory connecting Brent to wrongful expenditures
if the pasture payments are to offset the reimbursement.
          Field argues the payment from Maltese Cross is attributable to Brent under the
contract because when Brent’s husband received the funds and used them for non-partnership purposes the funds were community property. According to Field’s argument,
because it is presumed that property acquired during marriage is community, it was for
Brent to prove by clear and convincing evidence that the funds her husband received were
his separate property. 
          Here, however, the issue is not the character of funds in the hands of Brent’s
husband, but conduct described by contractual language. Assuming, without deciding, that
Brent’s husband received and expended Maltese Cross payments for non-partnership
purposes, the parties do not direct us to, and we do not find, any evidence giving rise to a
theory vicariously or directly binding Brent for the conduct of her husband.


 Under the
express language of paragraph 5, there is no legal basis to charge Brent with her husband’s
allegedly wrongful receipt of Maltese Cross payments.
          Within the grouping of issues under discussion here, Brent asserts through three
sub-issues that no evidence supports the trial court’s implicit findings of offset in favor of
Field for (1) missing partnership hay, allegedly removed by Brent’s husband, (2) partnership
funds totaling $6,239.29 allegedly used by Brent’s husband for a personal cattle truck lease
payment and tires, (3) and interest on a capital contribution from Field to the partnership. 
The trial court, however, did not award an offset of Brent’s reimbursement for any of these
items. 
          We sustain Brent’s issues four, five, and eight as to the offset of $102,460. We
overrule the associated sub-issues challenging offsets for hay, cattle truck expenditures,
and interest on a capital contribution. We do not reach the remaining sub-issues as their
discussion is unnecessary to our disposition. See Tex. R. App. P. 47.1.
          By her sixth issue, Brent asserts she conclusively proved entitlement under
paragraph 5 of the February 2003 contract to a credit of $114,591.82 against Field’s offsets
to the reimbursement. She argues it was undisputed that Field and her husband expended
partnership funds for non-partnership purposes. In this respect, the contract provides, “any
funds expended or used by [Field or her husband] for non-partnership purposes shall be
credited against the offsets [of Brent’s reimbursement].” 
          An appellant attacking the legal sufficiency of evidence supporting an adverse finding
on which she had the burden of proof must show on appeal that a contrary finding was
established as a matter of law. Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). 
Brent’s matter of law issue requires we first examine the record for some evidence
supporting the trial court’s implicit finding that she was not entitled to the credit of any offset,
crediting evidence favoring it if a reasonable fact finder could and disregarding contrary
evidence unless a reasonable fact finder could not. See Central Ready Mix Concrete Co.,
Inc. v. Islas, 228 S.W.3d 649, 651 (Tex. 2007). If no evidence appears to support the
finding, we then examine the entire record to determine whether the contrary proposition
is established as a matter of law. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex.
2001) (per curiam); Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co., 766 S.W.2d 264,
276 (Tex.App.–Amarillo 1988, writ denied). A proposition is established as a matter of law
when a reasonable fact finder could draw only one conclusion from the evidence presented. 
See City of Keller v. Wilson, 168 S.W.3d 802, 814-16 (Tex. 2005). 
          The evidence was not conclusive that the challenged expenditures of Field and her
husband were for non-partnership purposes. Without objection the trial court admitted
exhibits consisting of computer data entries, statements, and canceled checks offered to
show misuse of partnership funds by Field and her husband. The items comprising the
exhibits, while perhaps illustrative of imprudent accounting practices, do not, on their face,
conclusively prove misuse of partnership funds by Field and her husband. 
          Brent testified she was “questioning” food store charges and vehicle maintenance
charges. She further qualified her awareness of the latter charge with, “I don’t know.” She
agreed that charges for pet food for partnership hunting dogs did not fit what she believed
appropriate. When asked on cross-examination if charges were for non-partnership
purposes Brent responded “[j]ust from my personal knowledge and experience, I believe
they’re personal.” Later, Brent agreed it was her assumption that the charges were for non-partnership purposes but she did not know. Still later Brent agreed she did not know if the
charges were for non-partnership purposes. 
          Concerning amounts Brent attributed to the wrongful purchase by Field of health
insurance for Field and her family, Field’s husband testified that at the request of Brent’s
husband he accepted a bookkeeping position with the partnership. Compensation included
salary and health insurance. 
          But even were we to assume no evidence supports the court’s implicit finding,
conclusive proof of Brent’s proposition is lacking. The unsupported assumptions and
subjective belief of Brent create no more than surmise or suspicion and in effect amount to
no evidence. See Seideneck v. Cal Bayreuther Associates, 451 S.W.2d 752, 755 (Tex.
1970). (“when the evidence offered to prove a vital fact is so weak as to do no more than
create a mere surmise or suspicion of its existence, such evidence is in legal effect no
evidence, and it will not support a verdict or judgment”). And the testimony of Field’s
husband on the insurance expenditure issue raises a question of fact which the trial court
implicitly resolved against Brent. We, accordingly, overrule Brent’s sixth issue.
          In her seventh issue, Brent asserts there was no evidence to support the trial court’s
equal division between her and Field of the charge by Thomas & Watson for hauling cattle. 
Prior to trial, and based on a stipulation of the parties, the court signed an agreed order
finding that in November 2002 Thomas & Watson performed the hauling for which it sought
payment, its charge with interest was $7,769.19, and it incurred reasonable and necessary
attorney’s fees of $6,485.73. The order left for trial determination of the party or parties
responsible for paying the Thomas & Watson obligation. 
          Field’s husband testified Thomas & Watson was not paid because he did not believe
the cattle hauled were partnership cattle. On cross-examination of Billy Ray Watson, a
principal of Thomas & Watson, the following exchange occurred:
Q.Now I have no doubt that these cattle were hauled, but can you tell
me, sir, who owned the cattle–

 
A.No.

 
Q.–as between [Brent’s husband], [Brent’s father-in-law], Maltese Cross,
JJ, or someone else; can you tell me who owned the cattle?

 
A.No I can’t.
 
          Documentary evidence included canceled checks paid to Thomas & Watson and
drawn on the accounts of “R. P. Brent IV Cattle,” and “3 B Cattle Co.” Watson testified of
loading cattle for Brent’s husband but he also acknowledged receiving checks from 3 B
Cattle Co. He further testified that one load of cattle was taken from a location where the
“Brents” sometimes penned cattle. It is impossible to determine from the testimony whether
“Brents” referred to Brent and her husband or her husband and father-in-law. There was
no testimony explaining on whose behalf Brent’s husband acted when he arranged for
hauling the loads in question. Brent’s husband invoked the Fifth Amendment privilege
against self-incrimination when asked whose cattle Thomas & Watson hauled in 2002. As
noted, at various times, cattle pastured on the Houghton Ranch belonged to the
partnership, Maltese Cross, and Brent’s husband. A voluminous trial exhibit contained the
bills of lading and invoices of Thomas & Watson. Our examination of these records shows
that bills of lading for shipments during November 2002 identify Brent’s husband, 3 B Cattle,
or Brent Ranch as shipper. A summary invoice, which according to Watson approximated
the charges Thomas & Watson sought, indicates the purchaser of services was Brent’s
husband. Two bills included on the invoice show the shipper was the Brent Ranch. Of
these, one bill indicates the cattle were loaded at the Houghton Ranch. Three bills on the
summary list the Houghton Ranch as point of loading. 
          By the agreed order, the issue of which party to the suit was obligated for the
Thomas & Watson obligation was tried. The court split the amount equally between Brent
and Field. From the evidence presented, however, it is not possible to determine what, if
any, charges are properly attributable to any of the parties to the underlying action. We
must sustain Brent’s seventh issue. 
          By her ninth issue, Brent argues the trial court’s judgment is ambiguous in its
apportionment between her and Field of the Thomas & Watson obligation and by twice
taxing court costs in favor of Thomas & Watson. Field does not challenge by separate
appeal the award against her in favor of Thomas & Watson. See Tex. R. App. P. 25.1(c). 
Our disposition of Brent’s seventh issue makes consideration of her ninth issue
unnecessary. Tex. R. App. P. 47.1. 
          By her eleventh issue, Brent contends that as a matter of law she was entitled to an
award of attorney’s fees. In her live pleading, Brent alleged Field breached their February
2003 contract by not paying all sums due. Brent sought recovery of attorney’s fees
according to Chapter 38 of the Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem.
Code Ann. § 38.001 et seq. (Vernon 2008). Through the testimony of her attorney, Brent
presented detailed evidence of the amount of attorney’s fees expended and to be expended
as well as opinion testimony that the fees charged were reasonable and necessary. To his
testimony of the representation, counsel applied the nonexclusive factors prescribed by the
Texas Supreme Court for determining the reasonableness of attorney’s fees. See Arthur
Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997) (citing Tex.
Disciplinary R. Prof. Conduct 1.04, reprinted in Tex. Gov’t Code Ann., tit. 2, subtit. G app.
A (Tex. State Bar R. art. X, § 9)). The court granted Brent a money judgment of $55,634.88
plus prejudgment interest at the rate of six percent. Yet, it denied her an award of attorney’s
fees.
          Whether a party is entitled to recover attorney’s fees is a question of law for the trial
court which we review de novo. See Holland v. Wal-Mart Stores, Inc., 1 S.W.3d 91, 94, 95
(Tex. 1999). A party may recover reasonable attorneys’s fees in a suit founded on a claim
for breach of an oral or written contract. Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8)
(Vernon 2008). The party must prevail on a cause of action for which the recovery of
attorney’s fees is allowed and recover damages. Green Int’l v. Solis, 951 S.W.2d 384, 390
(Tex. 1997). Under section 38.001, an award of reasonable attorney’s fees is mandatory
if there is proof of the reasonableness of the fees. Tex. Civ. Prac. & Rem. Code Ann. §
38.001 (Vernon 2008); Recognition Communs., Inc. v. Am. Auto. Ass’n, Inc., 154 S.W.3d
878, 891 (Tex.App.–Dallas 2005, pet. denied); Budd v. Gay, 846 S.W.2d 521, 524
(Tex.App.–Houston [14th Dist.] 1993, no writ). A court possesses discretion to determine
the amount of attorney’s fees, but it lacks discretion to deny attorney’s fees if they are
proper under section 38.001. Budd, 846 S.W.2d at 524. 
          Field argues the trial court did not err by failing to award attorney’s fees because she
was sued for over $800,000 and “prevailed” on all but $55,000 of Brent’s claim. But this is
not the standard under section 38.001. A recovery of attorney’s fees under section 38.001
is allowed even though the damages a party recovers are completely offset by the claim of
the opposing party. McKinley v. Drozd, 685 S.W.2d 7, 10-11 (Tex. 1985). Thus while a
party must prevail on a ground under 38.001, it need not obtain a net recovery. Id. Brent
obtained a net recovery.
          The main issue in this case was what, if any, amount was due Brent under the
February 2003 contract. Pursuant to the contract, the trial court awarded Brent an amount
of money. The trial court was without discretion to deny her an award of attorney’s fees
according to section 38.001. The amount of the award remains a question of fact which the
trial court must resolve on limited remand. We sustain Brent’s eleventh issue.
          In her tenth issue, Brent complains that the trial court erred by ordering Amarillo
National Bank to disburse the funds held in the escrow account according to specified
amounts. Following judgment, but before the lapse of the trial court’s plenary power, the
bank intervened in the underlying case by interpleading the escrowed funds into the registry
of the court. The bank was subsequently discharged by agreed order. The funds are the
subject of a proceeding brought by Brent under Rule of Appellate Procedure 24 to suspend
enforcement of the judgment. They currently remain in the registry of the trial court. Given
our disposition of Brent’s other issues, and the presence of the funds in the registry of the 
court, it is not necessary that we further address her tenth issue. Tex. R. App. P. 47.1.
Conclusion
          Having addressed the appellate issues necessary to disposition of the appeal, we
render judgment that Brent recover from defendants Martha C. Field and J & J Family
Limited Partnership jointly and severally the sum of $158,094.88


, prejudgment interest at
the annual rate of 6%, post-judgment interest on the total sum at the annual rate of 6%, and
costs of court.
          The award to Brent of $4,240.55 as prejudgment interest is vacated and the case
remanded to the trial court for calculation of prejudgment interest consistent with this
opinion.
          That portion of the judgment denying Brent an award of attorney’s fees is reversed
and the case remanded to the trial court for determination of a reasonable award of
attorney’s fees for Brent according to Chapter 38. Tex. Civ. Prac. & Rem. Code Ann. §
38.001 et seq. (Vernon 2008).
          That portion of the judgment awarding Thomas & Watson Trucking, Inc., recovery
from Brent is reversed and judgment is rendered that Thomas & Watson Trucking, Inc., take
nothing by its counterclaim against Brent. 
          We vacate the following portion of the judgment:
The Court references that certain Escrow Agreement dated October
5, 2005, between Amarillo National Bank, J & J Cattle Family Limited
Partnership, JJ Roundup, Inc., Martha C. Field, and Elizabeth C. Brent.
The Court ORDERS Amarillo National Bank to disburse the escrow
funds as follows:
$59,875.43 shall be disbursed to Elizabeth C. Brent;
$7,127.46 shall be disbursed to Thomas & Watson Trucking, Inc.; and
The balance of the escrow funds shall be disbursed to Martha C. Field.
          We otherwise affirm the judgment of the trial court. 
          The proceedings in the trial court on remand and its resulting judgment shall be
according to the following instructions. This is a limited remand.


 The issues for
determination by the trial court on remand are the amount of prejudgment interest Brent is
due according to this opinion and our judgment, and an award of reasonable attorney’s fees
for Brent. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001 et seq. (Vernon 2008). After
determining these two issues, the trial court shall sign a judgment containing: (1) its
determinations on the issues remanded; (2) the matters on which we have rendered
judgment; and (3) the matters we have affirmed. Concurrent with signing its judgment on
remand, and according to the terms of that judgment, the trial court shall issue an order
directing the district clerk to distribute the funds held in the trial court’s registry in this case
to Brent, Thomas & Watson, and Field. The order shall further provide for payment to
Hartley County according to statute. Tex. Local Gov’t Code Ann. § 117.054 (Vernon 2008).
 
James T. Campbell

Justice