REVERSE IN PART, AFFIRM IN PART, REMAND; and Opinion Filed June 21, 2013.

In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

No. 05-11-01423-CV

---

## CITIBANK (SOUTH DAKOTA), N.A., Appellant/Cross-Appellee
## V.
## MICHAEL S. TRAN, M.D. AND THANH TRAN, Appellees/Cross-Appellants

---

On Appeal from the 95th Judicial District Court
Dallas County, Texas
Trial Court Cause No. 08-14313-D

---

## MEMORANDUM OPINION
Before Justices Lang-Miers and Fillmore[1]
Opinion by Justice Lang-Miers

Appellant/Cross-Appellee Citibank (South Dakota), N.A. and Appellees/Cross-Appellants Dr. Michael S. Tran and Mrs. Thanh Tran appeal from the amended final judgment following a jury trial in this breach of contract and libel case. For the following reasons, we reverse the trial court's judgment on the Trans' breach of contract claim and claim for attorney's fees, affirm the judgment on the Trans' libel claim, and render a take-nothing judgment in favor of Citibank. We remand to the trial court for the determination of Citibank's attorney's fees on its breach of contract counterclaim.

---

[1] The Honorable Mary Murphy, retired Justice, Court of Appeals for the Fifth District of Texas at Dallas, sat on the panel during oral argument and original submission, but did not participate in this decision.

## BACKGROUND

This lawsuit arose from a credit card purchase in August 2006. Dr. Tran purchased medical equipment from a seller on eBay. He charged the purchase price of $14,580 to a credit card issued by Citibank to his wife. PayPal divided the payment into two credit card transactions: a $10,000 charge made the day Dr. Tran purchased the equipment, and a $4,580 charge made the next day. When Dr. Tran received the equipment, he claimed it was missing a part advertised on eBay and called the seller about returning the equipment. At first the seller okayed the return, but was going to charge a restock fee and require Dr. Tran to pay the return shipping. Dr. Tran was not satisfied with the seller's response and called Citibank to cancel the transaction. Citibank sent complaint forms to Mrs. Tran to complete, one for each credit card charge. Dr. Tran completed and promptly returned the forms to Citibank. He did not return the equipment to the seller. The seller later called Dr. Tran and said he would not accept the return of the equipment.

Over the next several months, Citibank issued chargebacks for both credit card charges, but it issued those chargebacks seven weeks apart. The chargeback for the $4,580 charge was issued in early October 2006; the chargeback for the $10,000 charge was not issued until late November 2006. The seller accepted the $4,580 chargeback, leaving only the chargeback for $10,000 in dispute. PayPal disputed the $10,000 chargeback because the merchandise had not been returned.

Citibank asked the Trans several times to provide proof that they had returned the equipment. Citibank notified the Trans in late December 2006 that they had to provide proof of return by January 16, 2007, or the charge would be rebilled to their account. It is undisputed that the Trans did not return the equipment or provide proof of return by January 16. Citibank rebilled the $10,000 charge, along with late fees and interest charges, to the Trans' account. Citibank also reported the disputed charge to the credit bureaus.

Throughout 2007, the Trans and Citibank continued to exchange communications about the $10,000 charge and related fees. Eventually Citibank learned that the Trans had returned the equipment on January 19, 2007. Citibank removed the late fees and interest charges from the Trans' account and asked the Trans to provide proof that PayPal had credited their account for the $10,000. It is undisputed that the Trans' Citibank account was never credited. Meanwhile, the Trans hired a lawyer who was able to get the seller to refund $4,500 directly to the Trans.

In late 2008, the Trans sued Citibank for breach of an oral agreement and libel. They claimed that Citibank orally agreed to issue timely notices of their intent to challenge the purchase of the medical equipment and that Citibank failed to comply with the agreement. They also claimed that Citibank libeled them when it reported the disputed charge to the credit bureaus, and they were damaged when they sought to obtain a mortgage and had to pay a higher interest rate. Citibank counterclaimed for breach of the written card agreement.

The trial court granted summary judgment on Citibank's counterclaim for breach of the written card agreement, and the remaining issues were tried to a jury. The jury found in favor of the Trans on all issues. It awarded $13,946 in damages on the breach of oral agreement claim, $5,000 for mental anguish on the libel claim, and $128,991 in attorney's fees through trial plus conditional attorney's fees through the appeals process. Citibank moved for judgment notwithstanding the verdict on all issues, and the trial court set aside the jury's findings on the Trans' libel claim. Citibank also filed a motion to modify the judgment in which it asked for an award of attorney's fees for its breach of contract counterclaim against Mrs. Tran. The trial court did not rule on the motion and it was overruled by operation of law. After offsetting the $10,000 judgment awarded to Citibank on its counterclaim for breach of the written card agreement, the court awarded the Trans $3,946 on their breach of oral agreement claim and $177,991 in attorney's fees plus court costs and interest. Both parties appeal.

## THE TRANS' CLAIM FOR BREACH OF ORAL AGREEMENT

Citibank argues that its relationship with the Trans is governed by the written card agreement and there is no evidence the parties agreed to modify the written agreement. It also argues that there is no evidence Citibank formed an oral agreement with the Trans, and, even if there was, there is no evidence Citibank breached it or that the Trans suffered damages.

### Standard of Review

An appellant attacking the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof must demonstrate there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Affordable Power, L.P. v. Buckeye Ventures, Inc.*, 347 S.W.3d 825, 830 (Tex. App.—Dallas 2011, no pet.). When examining a legal sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). In doing so, we do not consider the evidence "in isolated bits and pieces divorced from its surroundings; it must be viewed in its proper context with other evidence." *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008). Evidence is legally sufficient if it rises to a level that would enable a reasonable and fair-minded jury to make the finding. *City of Keller*, 168 S.W.3d at 827. A legal sufficiency challenge fails if there is more than a scintilla of evidence to support the finding. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006); *Affordable Power, L.P.*, 347 S.W.3d at 830. Evidence that is "so weak as to do no more than create a mere surmise or suspicion" of a fact is not legally sufficient evidence that the fact exists. *Suberu*, 216 S.W.3d at 793 (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)); *see also Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011).

## Applicable Law

Citibank contends that we should apply South Dakota law in our analysis of the Trans' claims because the written card agreement contains a South Dakota choice of law provision. Conversely, the Trans contend that we cannot apply South Dakota law because Citibank did not comply with rule 202 of the Texas Rules of Evidence concerning judicial notice of the law of other states. *See* TEX. R. EVID. 202. Although Citibank's motion for summary judgment argued that South Dakota law should apply, there is nothing in the record to show that Citibank moved the trial court to apply South Dakota law to the issues submitted to the jury or that the trial court applied South Dakota law. *See id.* Consequently, we apply Texas contract law in our analysis of the issues.

A plaintiff suing based on a contract, whether written or oral, must prove the essential elements of a contract, including offer, acceptance, and a meeting of the minds. *See Principal Life Ins. Co. v. Revalen Dev., LLC*, 358 S.W.3d 451, 454–55 (Tex. App.—Dallas 2012, pet. denied); *Branch Banking & Trust Co. v. TCI Luna Ventures, LLC*, No. 05-12-00653-CV, 2013 WL 1456651, at *3 (Tex. App.—Dallas Apr. 9, 2013, no pet. h.). "[T]he offer must be reasonably definite in its terms and must sufficiently cover the essentials of the proposed transaction that, with an expression of assent, there will be a complete and definite agreement on all essential details." *Principal Life Ins. Co.*, 358 S.W.3d at 455; *see also Effel v. McGarry*, 339 S.W.3d 789, 792 (Tex. App.—Dallas 2011, pet. denied) (to form an enforceable contract, "the minds of the parties must meet with respect to the subject matter of the agreement, and as to all of its essential terms"). In other words, "[t]he parties must assent to the same thing, in the same sense, at the same time." *Principal Life Ins. Co.*, 358 S.W.3d at 455. All essential terms of the agreement must be agreed upon before a contract may be enforced by the courts. *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). And "[e]ach contract

should be considered separately to determine its material terms." *Id.* If the terms of an alleged contract are so indefinite that it is impossible for the courts to determine the rights and obligations of the parties, it is not an enforceable agreement. *Effel*, 339 S.W.3d at 792; *see also Meru v. Huerta*, 136 S.W.3d 383, 390 (Tex. App.—Corpus Christi 2004, no pet.) ("It is well established that the terms of an oral contract must be clear, certain and definite.")

## Discussion

The trial court submitted the following question to the jury:

Did Dr. and Mrs. Tran reach an oral agreement with Citibank that Citibank would act on behalf of the Trans to timely issue proper notices of the Trans' intention to challenge, investigate and/or cancel the August 2006 disputed purchase of medical equipment from [the seller]?

"The August 2006 disputed purchase of medical equipment" means Dr. Tran's August 2006 purchase of medical equipment from [seller], using, as an authorized user, the Gold MasterCard issued to Mrs. Tran by Citibank.

In deciding whether the parties reached such an agreement, if any, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

Citibank argues that there is no evidence to support the jury's "yes" answer to the question. It argues that there is no evidence of what the parties intended as "timely" notice, no evidence of what the parties intended as "proper" notice, no evidence of the parties' intent about to whom the notice should be given, and no basis in the record for this Court to understand Citibank's obligations under the alleged oral agreement.

The Trans contend that Citibank did not preserve its arguments that the "terms were unclear, indefinite" and that the "oral agreement lacked sufficient clarity to be understood" because it did not argue this below. But we conclude that Citibank preserved its arguments in its objections to the submission of the jury charge and in its motion for judgment n.o.v. *See*

–6–

*Defterios v. Dallas Bayou Bend, Ltd.*, 350 S.W.3d 659, 664 (Tex. App.—Dallas 2011, pet. denied) (discussing preservation of legal sufficiency complaint). Citibank argued that the question should not be submitted because there was no "evidence of a separate oral agreement," no evidence of a "meeting of the minds," and "[i]t's not a contract." It also argued in its motion for judgment n.o.v. that there is "no evidence of oral communications in which such an agreement might have been reached," "no evidence of formation of any such oral agreement," and "no evidence of material terms of any such oral agreement." We conclude that these arguments preserved a claim that the terms of the agreement "were unclear, indefinite" or "lacked sufficient clarity to be understood and enforced[.]" *See id.*

To reverse the jury's finding on legal insufficiency grounds, we must conclude that the Trans offered no evidence to support an essential element of the contract. The Trans contended, and the jury found, that Citibank orally agreed to "timely issue proper notices." The material terms of the alleged agreement, then, included that Citibank would "timely issue" notices challenging the transaction. We begin our analysis by reviewing the record for evidence favorable to a finding that Citibank agreed to "timely issue" the notices."[2]

Dr. Tran is the only witness to testify about the oral agreement with Citibank. Dr. Tran testified that when he was unable to get a satisfactory response from the seller about returning the medical equipment, he called Citibank to "see if they can help me to get the money back." He told Citibank that he "want[ed] to send this back and get my money back." A Citibank representative told Dr. Tran that it has a "certain procedure" it has to follow, that it would send him written complaint forms to complete, sign, and return, and then Citibank would "try to help [him] to get the money back." A few days later, Dr. Tran received the two forms from Citibank,

---

[2] By "notices," it appears the parties were referring to Citibank's chargebacks.

one for each credit card charge. The forms were identical except for the amount of the transaction. Dr. Tran handwrote his answers (indicated in italics):

Dear Thanh N Tran:

Thank you for contacting our Customer Service Center. This letter is regarding your inquiry about the transaction dated 08-Aug-06 in the amount of $10,000.00 [$4,580.00] made at PAYPAL [merchant name] with account number [ ]5664.

Please assist us with this investigation for $10000.00 [$4580.00] by promptly reviewing, completing, and returning the following information within 10 days of your receipt of this letter. If we do not receive your response, we will assume the charge is correct and rebill your account.

An important first step in resolving this matter is for you to attempt to contact the merchant and return the merchandise (return receipt requested). Then provide us with the following:

∘ "I received defective merchandise from the merchant by mail or delivery on *8/28/06* [*8/28/06*] (date). I returned the merchandise on __/__/__ (date)." *Attempts to return the item repeatedly – unsuccessful* [*Attempts to return the item repeatedly – unsuccessful*]

∘ A description of the defect. *Item received with missing part as described on Ebay* [*Item received with missing component as described on Ebay*]

∘ The merchant's response to your request for credit or the reason you were unable to contact them. If available, please enclose a copy of the of the [sic] credit slip. *Merchant was asking for more money for the missing part in response to my inquiry about the involved part* [*Merchant was asking for more money for the missing part in response to my inquiry about the missing part*]

∘ A copy of a certified postal receipt or a tracer from the shipping company. This must be signed by the merchant showing proof of return. If not available, please explain. *Not available – merchant refused to authorize the return* [*Not available – merchant refused to authorize the return*]

Cardmember Signature *Michael Tran* [*Michael Tran*]        Date *9/7/06* [*9/7/06*]

A conditional credit has been issued to your account while we investigate this matter on your behalf. Please respond within the next 10 days to: [address].

Dr. Tran also testified that he asked Citibank for "assistance" and he believed "wholeheartedly that they – they will give me the assistance. . . . They will help." Dr. Tran thanked Citibank "for your assistance in protecting my credit card purchase."

The record showed that after Citibank received the completed complaint forms, it assigned the forms to two different people. As a result, Citibank issued two chargebacks at two different times about seven weeks apart. The Trans argued that Citibank orally agreed to "timely" challenge the transaction and breached the agreement when it did not issue the chargebacks together. But the Trans did not offer any evidence to show that Citibank agreed to issue the notices or chargebacks by a certain date, within a certain time frame, or at the same time. In closing argument, the Trans argued that Citibank had "clear, lawful instructions to follow, and they just don't obey those instructions." But there is nothing in the record to show that Citibank had instructions on the timing of the chargebacks. If the Trans were referring to the complaint forms as the "instructions," the forms do not speak to the timing of the challenges. At most they show that Citibank agreed to investigate the charges.

The Trans also contend that Citibank's representative "established the 'goof' of Citibank" in issuing the notices seven weeks apart and that her testimony "alone, could be seen by the jurors as its failure to comply with the oral agreement in its trusted role as agent for the Trans." But before there can be a breach, there must have been an agreement. And as we have discussed, there is no evidence in the record about the timing of the notices. We conclude that the Trans did not offer legally sufficient evidence of a material term of the oral agreement, and, consequently, the contract fails for indefiniteness. *See T.O. Stanley Boot Co.*, 847 S.W.2d at 221–22. Because the Trans did not prevail on appeal on their claim for breach of oral agreement, they are not entitled to recover attorney's fees on that claim, and we reverse the award of attorney's fees.

### CITIBANK'S COUNTERCLAIM FOR BREACH OF CONTRACT

Before trial, the court granted partial summary judgment in favor of Citibank on its counterclaim against Mrs. Tran for the $10,000 credit card debt. The trial court did not award Citibank its attorney's fees, however, and instead submitted that issue to the jury. The jury

awarded zero attorney's fees to Citibank, and Citibank filed a motion to modify the judgment. The trial court did not rule on the motion. Citibank argues that it is entitled to recover attorney's fees because it prevailed on its breach of contract counterclaim against the Trans and the trial court erred when it declined to modify the judgment to award attorney's fees to Citibank. The Trans argue that Citibank is not entitled to its attorney's fees because it did not segregate the fees incurred solely for the breach of contract counterclaim.

## Standard of Review

We review the denial of a motion to modify a judgment for an abuse of discretion. *See Wagner v. Edlund*, 229 S.W.3d 870, 879 (Tex. App.—Dallas 2007, pet. denied). We may reverse only if the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles. *See Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991).

A trial court may disregard a jury's negative finding if there was no evidence to support the finding. *Cale's Clean Scene Carwash, Inc. v. Hubbard*, 76 S.W.3d 784, 786 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Consequently, we review the evidence supporting the jury's finding for legal sufficiency. *See id.* We first examine the record for evidence to support the finding. *Id.* If there is no evidence to support the jury's finding, we then examine the evidence to determine if the opposite finding is established as a matter of law. *See id.*

## Applicable Law

Attorney's fees are recoverable by the prevailing party in a breach of contract claim.[3] TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2008); *Citibank (S.D.), N.A. v. Durden*, No. 05-11-00154-CV, 2012 WL 6096569, at *4 (Tex. App.—Dallas Dec. 7, 2012, no pet.)

---

[3] Citibank argues that South Dakota law applies to its counterclaim for breach of the written card agreement. However, as we noted earlier, Citibank did not comply with rule 202 of the rules of evidence regarding notice of a sister state's laws. Regardless, South Dakota law also allows the recovery of attorney's fees by the prevailing party if the contract provides for the recovery of those fees. *Arrowhead Ridge I, LLC v. Cold Stone Creamery, Inc.*, 800 N.W.2d 730, 737 (S.D. 2011) (attorney's fees in South Dakota "are recoverable if the parties' contract so provides") (quoting *Credit Collection Servs., Inc. v. Pesicka*, 721 N.W.2d 474, 477 (S.D. 2006)); *see also* S.D.C.L. § 15–17–38 (West, Westlaw through 2006 amendments) ("The compensation of attorneys and counselors at law for services rendered in civil or criminal actions and special proceedings is left to the agreement, express or implied, of the parties. . . .").

–10–

(mem. op.) (same). If the prevailing party properly proves attorney's fees, the jury does not have the discretion to deny an award of attorney's fees. *Recognition Commc'ns, Inc. v. Am. Auto. Ass'n, Inc.*, 154 S.W.3d 878, 890–91 (Tex. App.—Dallas 2005, pet. denied). The jury may make a finding of zero attorney's fees only when the evidence did not establish that attorney services were provided or the value of those services, or the evidence showed affirmatively that no attorney services were needed or the services provided were of no value. *Id.* at 891.

A party must segregate its attorney's fees for recoverable and non-recoverable claims. *Tony Gullo Motors I, LP v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006). When "it cannot be denied that at least some of the attorney's fees are attributable only to claims for which fees are not recoverable, segregation of fees ought to be required and the jury ought to decide the rest." *Id.* at 314.

### Discussion

Citibank is entitled to attorney's fees because it prevailed on its breach of contract counterclaim against Mrs. Tran. Citibank contends that it offered uncontroverted evidence of reasonable and necessary attorney's fees in the amount of $68,595.67. The Trans argue that Citibank's summary judgment motion asked for $42,360 in attorney's fees, and they argue that Citibank did not prove that it incurred $68,595.67 in attorney's fees on a recoverable claim.

Referring to invoices for services rendered, attorney Evan Mueller testified at trial that reasonable and necessary attorney's fees through trial for the prosecution of Citibank's breach of contract counterclaim were $68,595.67. He testified that reasonable and necessary attorney's fees on appeal were $15,000 for an appeal to the court of appeals, $10,000 for filing a petition for review to the supreme court, $10,000 for preparing a brief on the merits if the court granted the petition, and $2,500 for presenting oral argument to the supreme court. Mueller testified that he segregated his recoverable fees from the fees that are not recoverable.

On cross-examination, Mueller agreed that Citibank asked for $42,360 in attorney's fees when it filed the motion for summary judgment on the credit card debt. But he explained that the Trans did not consent to judgment, the Trans contended they did not have to pay the credit card charge of $10,000, the Trans never offered to pay the $42,360 in attorney's fees, the Trans opposed the relief Citibank sought, and Citibank had prosecuted the claim since 2009. He testified that fees of $68,595.67 were reasonable and necessary through trial and represented the segregated fees for prosecuting Citibank's breach of contract claim. *See Cardiac Perfusion Servs., Inc. v. Hughes*, 380 S.W.3d 198, 212 (Tex. App.—Dallas 2012, pet. filed). Mueller's testimony established that attorney services were provided and that those services had value. *See Recognition Commc'ns, Inc.*, 154 S.W.3d at 891. Consequently, there is no evidence to support the jury's finding of zero attorney's fees for Citibank's prosecution of its breach of contract counterclaim. *See id.*

The Trans argue, however, that Mueller did not segregate his fees for recoverable and non-recoverable claims. We agree. Although Mueller testified that the fees were segregated, he testified that he arrived at the segregated fees by deducting those fees incurred before Citibank filed its counterclaim for breach of contract. He did not offer testimony about segregation pursuant to the law enunciated in *Tony Gullo Motors*. *See* 212 S.W.3d at 313–14. And the invoices admitted into evidence do not segregate the fees by recoverable and nonrecoverable claims. Although it is possible the fees were necessarily incurred in prosecuting Citibank's breach of contract counterclaim, Mueller's testimony is not sufficient for us to arrive at an amount of attorney's fees as a matter of law. *See Recognition Commc'ns, Inc.*, 154 S.W.3d at 891; *Cale's Clean Scene Carwash, Inc.*, 76 S.W.3d at 786. Consequently, we remand to the trial court the issue of the amount of Citibank's attorney's fees on its breach of contract counterclaim.

## TRANS CROSS-APPEAL ON LIBEL CLAIM

The amended judgment set aside the jury's favorable findings on the Trans' libel claim and rendered judgment that the "written statements regarding the [Trans] . . . were substantially true, as a matter of law." In their cross-appeal, the Trans argue that the trial court erred when it granted Citibank's motion for judgment n.o.v. and set aside the jury's findings on their libel claim.

### Standard of Review

A trial court may disregard a jury's finding and grant a motion for judgment n.o.v. when there is no evidence to support the jury's finding. TEX. R. CIV. P. 301; *Helping Hands Home Care, Inc. v. Home Health of Tarrant Cnty., Inc.*, 393 S.W.3d 492, 515 (Tex. App.—Dallas 2013, pet. filed). We review a trial court's decision to grant a judgment n.o.v. for legal sufficiency. *Helping Hands Home Care*, 393 S.W.3d at 515. Considering the evidence favorable to and reasonable inferences that tend to support the finding, we will affirm the trial court's decision if the evidence supporting the finding is no more than a scintilla. *See City of Keller*, 168 S.W.3d at 810.

### Applicable Law

A statement is defamatory if it "tends to . . . injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation. . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (West 2011). To prevail on a libel claim, the plaintiff must prove that the defendant (1) published a statement of fact; (2) that was defamatory concerning the plaintiff; (3) while acting with negligence regarding the truth of the statement. *Main v. Royall*, 348 S.W.3d 381, 389 (Tex. App.—Dallas 2011, no pet.). True statements cannot form the basis of a

—13—

defamation complaint. *Grand Champion Film Prod., L.L.C. v. Cinemark USA, Inc.*, 257 S.W.3d 478, 481 (Tex. App.—Dallas 2008, no pet.).

## Discussion

Before trial, the court granted summary judgment in favor of Citibank on its claim that Mrs. Tran owed the $10,000 credit card charge. The judge found as a matter of law that Mrs. Tran, and Dr. Tran as an authorized user, owed the $10,000 debt. The Trans have not appealed that summary judgment and, in fact, concede they owe the credit card charge of $10,000. Consequently, any report Citibank made to the credit bureaus stating that Dr. or Mrs. Tran owed the credit card charge of $10,000 was true. We conclude the trial court did not err by setting aside the jury's answers on the libel claim. We resolve the Trans' cross-appeal issues against them.

## CONCLUSION

We reverse the trial court's judgment on the Trans' claims for breach of contract and attorney's fees and render a take-nothing judgment in favor of Citibank. We affirm the trial court's take-nothing judgment on the Trans' libel claim. We remand to the trial court for the determination of Citibank's attorney's fees on its breach of contract counterclaim against Mrs. Tran.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

111423F.P05

–14–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CITIBANK (SOUTH DAKOTA), N.A.,
Appellant

No. 05-11-01423-CV    V.

MICHAEL S. TRAN, M.D. AND THANH
TRAN, Appellees

On Appeal from the 95th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 05-14313-D.
Opinion delivered by Justice Lang-Miers,
Justice Fillmore participating.[4]

     In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** the trial court's judgment on Michael S. Tran, M.D.'s and Thanh Tran's claims for breach of contract and attorney's fees and render a take-nothing judgment in favor of Citibank (South Dakota), N.A. We otherwise **AFFIRM** the trial court's judgment. We **REMAND** this cause to the trial court for the determination of attorney's fees on Citibank's counterclaim for breach of contract against Thanh Tran.

     It is **ORDERED** that appellant Citibank (South Dakota), N.A. recover its costs of this appeal from appellees Michael S. Tran, M.D. and Thanh Tran.

Judgment entered this 21st day of June, 2013.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

---

[4]     The Honorable Mary Murphy, retired Justice, Court of Appeals for the Fifth District of Texas at Dallas, sat on the panel during oral argument and submission but did not participate in the opinion or judgment.